UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| In re: | MDL Docket No. 4:03CV1507WRW |
| PREMPRO PRODUCTS LIABILITY LITIGATION | |
| This document relates to the following action(s) | |
| *Donna Scroggin v. Wyeth, et al.* Case Number - 4:04CV1169WRW | |
| *Helen Hill v. Wyeth, et al.* Case Number – 4:05CV0546WRW | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY**

**TO THE HONORABLE DISTRICT COURT:**

Pursuant to Federal Rules of Evidence 402 and 702, Plaintiffs Donna Scroggin and Helen Hill request that the Court enter an order:

1) Excluding the proposed testimony of Michael Kaufman, M.D., Thomas Stovall, M.D., and Steven Harms, M.D., and any of Defendants' other designated experts that smoking is a risk factor for breast cancer;

2) Excluding the proposed testimony of Michael Kaufman, M.D., and any of Defendants' other designated experts that: i) elevated leptin levels, as observed in animal studies, can promote the development of breast carcinoma in humans; ii) elevated leptin levels in humans can increase the risk of breast cancer in post-menopausal women; and iii) elevated leptin levels can promote the development of breast carcinoma in humans.

1

For the reasons outlined below, each of the above proferred expert opinions is unreliable and therefore inadmissible under Fed. R. Evid. 702 and the standards set forth in *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and its progeny.

### I. LIMITATIONS ON THE ADMISSIBILITY OF EXPERT TESTIMONY

Wyeth and Pfizer (hereafter collectively referred to as "Defendants") bear the burden of showing that their expert witnesses are qualified, and that their testimony is relevant to issues in the case, reliable, and helpful to the trier of fact. Fed. R. Evid. 702; *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

The Eighth Circuit has identified three prerequisites that expert testimony must meet to be admitted under Rule 702. First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Lauzon* at 686. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. *Id.* Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires ...." *Id.*

Many of these principles are codified in Federal Rule of Evidence 702 which imposes further specific limitations on the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As outlined below, the challenged expert opinions of Defendants' experts are inadmissible under Rule 702 and *Daubert*.

## II. EXPERT OPINIONS THAT SMOKING INCREASES THE RISK OF BREAST CANCER IN POST-MENOPAUSAL WOMEN IS UNRELIABLE AND THUS INADMISSIBLE

### A. Defendants' Expert Witnesses Are Not Qualified by Knowledge, Skill, Experience, Training or Education to Render an Opinion that Smoking is a Risk Factor for Hormone Positive Breast Cancer

Dr. Michael Kaufman is the Defendants' designated case-specific pathologist in the *Scroggin* case. Dr. Steven Harms is the Defendants' designated radiologist in both the *Scroggin* and the *Hill* cases. However, neither Dr. Kaufman nor Dr. Harms are experts in the field of epidemiology or experts in risks factors of the cause of breast cancer. Despite having no expertise in risk factors associated with breast cancer, both Dr. Kaufman and Dr. Harms have nevertheless offered expert opinions that smoking increases the risk of breast cancer in post-menopausal women.[1]

Yet, Rule 702 does not afford the expert unlimited license to testify without first relating that testimony to some "specialized knowledge" on the expert's part. In other words, the opinion must be an "expert" opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert. "Testimony consisting merely of personal opinion is not "scientific, technical, or other specialized knowledge," because "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 590 (1993). Accord, *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) (expert evidence must be "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist"). Similarly, courts discredit

---

[1] Expert Report of Michael Kaufman, at 3 (attached as Exhibit 1); Expert Report of Steven Harms regarding Donna Scroggin, at 2 (attached as Exhibit 2).

testimony by witnesses whose "expertise is gained exclusively from reading real experts' work."[2]

While each of Defendants' experts may be a medical doctor, each must also have some specialized knowledge, either through practical experience or academic training regarding the subject of their testimony. With regard to smoking as an increased risk factor for developing hormone positive breast cancer in post-menopausal women, Dr. Kaufman and Dr. Harms appear to have neither practical experience nor academic training.

In fact, Dr. Kaufman did not even bother to educate himself on the topic by reviewing the body of relevant scientific and medical literature. Since he had no independent knowledge on the matter, he asked Wyeth's counsel for articles on the topic. Dr. Kaufman's opinions regarding smoking as a risk factor for breast cancer are based on three articles supplied to him by Wyeth's counsel, and he does not even know how many articles on this topic exist in the published medical literature.[3] Dr. Harms relies on only one article[4] in support for his opinions, and as discussed below, the conclusions of that article are completely at odds with his testimony thus rendering his opinions unreliable.

---

[2] See *Burton v. Danek Med., Inc.*, 1999 U.S. Dist. LEXIS 2619, 1999 WL 118020, *3..4 (E.D. Pa. Mar. 1, 1999) (board certified neurologist not qualified to testify as an expert regarding spinal fusion surgery, with which he had no experience); *Mancuso v. Consolidated Edison Co.*, 967 F. Supp. 1437, 1442-45 (S.D.N.Y. 1997) (rejecting the qualifications of a proffered "expert" concerning PCB exposure, although he was a medical doctor, because he had no experience with toxic torts and his "self-education" in the effects of PCBs was insufficient); *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 372-73 (D.N.J. 1995) (disqualifying pulmonologist from testifying that plaintiff had a platinum allergy because he had no qualifications "other than his medical education and his years practicing as a pulmonologist," had only casually studied the literature on platinum allergy, and had never previously treated a patient who had that condition); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1476 (D.V.I.), aff'd, 46 F.3d 1120 (3d Cir. 1994) (witness educated as a pediatrician, pharmacologist, and toxicologist was not qualified to testify on the cause of birth defects because he had only reviewed selected literature on the subject for the purposes of litigation).

[3] *See* Kaufman Dep., p. 26:15-21 (attached as Exhibit 3).

[4] P. Band et al., *Carcinogenic and Endocrine Disrupting Effects of Cigarette Smoke and Risk of Breast Cancer*, Lancet, 360: 1044-49 (2002).

As outlined below, even if these experts were somehow qualified to render an opinion on increased risk of breast cancer and smoking, such opinions must still be excluded because there are no reliable facts or data supporting such opinions. *See* Fed. R. Evid. 702.

**B.    No Reliable Facts or Data Support the Opinion(s) that Smoking is a Risk Factor for Hormone Positive Breast Cancer in Post-Menopausal Women**

Under Rule 702, expert opinions based on insufficient data or facts are inadmissible. Similarly, an expert's testimony which is not founded in valid scientific methodology or is not applied properly to the facts of a particular case must also be excluded.

In this case, there is no general acceptance in the medical or scientific community that smoking increases the risk of breast cancer generally. Indeed, even the published literature calls any association "controversial" and unproven. As outlined below, the medical and scientific communities have not reached a consensus and many studies show no association. For example, the website of the American Cancer Society under the section entitled *Factors With Uncertain, Controversial, or Unproven Effects on Breast Cancer Risk*, there is a list of "unproven risk factors" for breast cancer.[5] Included in this section along with antiperspirants, underwire bras, breast implants and night work, is tobacco smoke. The actual language on the website is:

> ***Tobacco smoke:*** *Most studies have found no link between active cigarette smoking and breast cancer. Though active smoking has been suggested to increase the risk of breast cancer in some studies, the issue remains controversial.*

The Mayo Clinic website is consistent with that of the ACS. According to the Mayo Clinic,

> ***Smoking.*** *Evidence is mixed on the relationship between smoking and breast cancer risk. Some studies show no link between cigarette smoking and exposure to secondhand smoke and breast cancer. Others suggest that smoking increases breast cancer risk.*

---

[5] *See* http://www.cancer.org/docroot/CRI/content/CRI_2_4_2X_What_are_the_risk_factors_for_breast_cancer_5.asp

5

The published medical literature confirms this lack of any clear or accepted association between smoking and breast cancer generally. The Nurses' Health Study investigators found that "cigarette smoking is not materially related to the risk of breast cancer."[6] In a similar attempt to study what if any effect smoking had on the risk of breast cancer, Baron, et al., examined this "controversial topic" in a "very large population–based case-control study."[7] This study examined the competing hypotheses that cigarette smoking might increase or decrease the risk of breast cancer. The study examined both current and past smokers, and it looked at whether the smoking was heavy or long term and whether the women were pre-or post-menopausal. The conclusion of the study was that "smoking does not influence the risk of breast cancer, even among heavy smokers who began smoking at an early age."

Indeed, some studies have concluded that the cigarette smoking may have a protective effect against the development of hormone dependent cancers, probably related to the anti-estrogenic effect of smoking.[8] In addition, various studies have shown that any increased risk in breast cancer from smoking is related to hormone receptor negative cancers, not hormone dependent cancers like the ones at issue in this case.[9] Manjer, et al., investigated whether smoking was associated with any prognostic markers, like estrogen receptor status, in women who developed breast cancer. The authors concluded that "smoking is associated with an increased occurrence of hormone receptor-*negative* tumors." *Id*.

---

[6] S. London, et al., *Prospective Study of Smoking and the Risk of Breast Cancer*, J. Nat'l Cancer Inst., 81:1625-1631 (1989).

[7] J. Baron, et al., *Cigarette Smoking and Breast Cancer*, Cancer Epidemiology, Biomarkers & Prevention, Vol. 5, 399-403 (May, 1996).

[8] A. Mueck & H. Seeger, *Smoking, Estradiol Metabolism and Hormone Replacement Therapy*, Cardiovascular & Hematological Agents, 3, 45-54 (2005).

[9] J. Manjer, et al., Smoking Associated with Hormone Receptor Negative Breast Cancer, Int. J. Cancer, 91, 580-584 (2001).

During his deposition, Defendants' expert, Dr. Harms, testified that Ms. Scroggin was at an almost eight fold increase of developing breast cancer based on her prior smoking.[10] Yet, Dr. Harm's opinion regarding smoking and increased risk of breast cancer is based solely on one study which directly contradicts his opinions.[11] As with all studies examining risk factors for breast cancer, it is important to focus on the right type of breast cancers (hormone dependent) and on right age of woman (post-menopausal). Dr. Harms' testimony does not make that distinction. Instead, he inappropriately applies the risk for smoking and breast cancer in pre-menopausal women with that of post-menopausal women who get breast cancer. The difference is significant because the authors of the study relied on by Dr. Harms made an opposite conclusion that there is no increased risk. The *Band* article states,

> In postmenopausal women, cigarette smoking was not associated with an increased risk of breast cancer, irrespective of pregnancy status or age at which smoking was initiated.

Because there is no reliable data supporting an association between smoking and hormone positive breast cancer in post-menopausal women, any such testimony should be excluded.

### III.    TESTIMONY THAT ELEVATED LEVELS OF LEPTIN INCREASES BREAST CANCER RISK OR PROMOTES THE DEVELOPMENT OF BREAST CANCER IS UNRELIABLE AND THUS INADMISSIBLE.

Defendants' expert pathologist, Dr. Kaufman, opines in his expert report that a biological substance called leptin "has been shown to increase breast cancer risk in post-menopausal

---

[10] *See* Harms Dep., p. 16-20 (attached as Exhibit 4).

[11] P. Band et al., *Carcinogenic and Endocrine Disrupting Effects of Cigarette Smoke and Risk of Breast Cancer*, Lancet, 360: 1044-49 (2002).

women, and it has been demonstrated in animal studies that elevated leptin levels, as observed in obesity, promotes the development of breast carcinoma."[12],[13]

As a threshold matter, Defendants have failed to show that Dr. Kaufman, a pathologist, possesses any specialized knowledge about leptin, its effects in animals, it relevance to humans or even any expertise in animal studies and the ability to extrapolate such studies to humans. However, even assuming arguendo that he does possess such knowledge, his opinions would still be unreliable and inadmissible. Dr. Kaufman's opinions are unreliable because: 1) he has failed to identify the studies he relies on; and 2) he has made no attempt to explain how or why he could extrapolate his opinions from the animal studies to humans. *See General Electric Co. v. Joiner*, 522 U.S. 136, 144-45 (1997)(exclusion of expert's testimony proper where expert failed to explain how data from animal studies could be extrapolated to humans).

Courts overwhelming hold that drawing conclusions in humans based on animal studies, in the absence of confirming human data, is insufficient to satisfy admissibility standards. *Wade-Greaux*, 874 F.Supp. at 1480. "To ensure that the expert's conclusion based on animal studies is reliable, there must be 'a scientifically valid link'--such as supporting human data-- 'between the sources or studies consulted and the conclusion reached." *Soldo*, 244 F. Supp.2d at 546; *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 195 (5th Cir. 1996) ("Where, as here, no epidemiological study has found a statistically-significant link between EtO exposure and human brain cancer; the results of animal studies are inconclusive at best"); *Renaud v. Martin Marietta Corp., Inc.*, 972 F.2d 304,307(10th Cir. 1992) ("The etiological evidence proffered by the plaintiff was not sufficiently reliable, being drawn from tests on non-human subjects without confirmatory epidemiological data."); *Richardson v. Richardson-Merrell, Inc.*, 857 F. 2d

---

[12] *See* Ex. 1, at 5.

[13] This motion applies to any of Defendants' experts who may testify on this same topic.

823,830 (D.C. Cir. 1988) (animal studies raise only a suspicion of causation in humans). The reason for requiring confirming human epidemiology is that [e]xtrapolations from animal studies to human beings are not considered reliable in the absence of a credible scientific explanation of why such extrapolation is warranted." *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1366 (ND. Ga. 2001), aff'd, 295 F.3d 1194 (11th Cir. 2002) (citing Hall, 947 F. Supp. at 1410). Here, Dr. Kaufman's conclusory statement about the effects of leptin and increased breast cancer risk in humans does not make it so. He has failed to identify any studies in support of his opinion, failed to explain the underlying facts or his methodology supporting his opinions. In short, there is no basis to conclude that he has any expertise on this subject matter or that his opinions are unreliable and they must be excluded.

## IV.  CONCLUSION

Plaintiffs request that this motion be set for hearing and, upon proper notice and hearing, that this Court enter an order granting the motion and excluding testimony of Drs. Kaufman, Harms and any of Defendants' other designated experts on such matters, or, alternatively, granting such other and further relief this Court deems appropriate.

Dated this 15th day of August, 2007.

**LITTLEPAGE BOOTH**

 /s/ Zoe. B Littepage
Zoe B. Littlepage – SBOT# 12430050;
Federal Bar #12896
1012 W. Alabama St.
Houston, Texas 77006
(713) 529-8000 – Telephone
(713) 529-8044 – Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of August, 2007, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, and a true and correct copy was forwarded by e-mail to the parties below:

Ms. Lyn Pruitt
Mitchell, Williams, Selig, Gates & Woodyard
425 West Capitol, Suite 1800
Little Rock, Arkansas 72201

John W. Vardaman
F. Lane Heard, III
Williams & Connolly, LLP
725 12th Street N.W.
Washington, D.C. 20005

Jay Mayesh
Alan E. Rothman
Steven J. Glickstein
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Elizabeth Robben Murray
Kevin A. Crass
Friday, Eldredge & Clark, LLP - Little Rock
Regions Center
400 West Capitol Avenue
Suite 2000
Little Rock, AR 72201-3493

/s/   Zoe B. Littlepage