**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **In re:** | **MDL Docket No. 4:03CV1507 WRW** |
| **PREMPRO PRODUCTS LIABILITY LITIGATION** | *Hill v. Wyeth et al.*, Case No. 4-05-CV-0546-WRW |
| | *Scroggin v. Wyeth et al.*, Case No.  4-05-CV-1169-WRW |

**WYETH'S OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE DEFENDANTS' EXPERT TESTIMONY**

Plaintiffs seek to exclude expert testimony (1) that smoking is a risk factor for breast cancer and (2) that obesity (specifically, leptin – an obesity protein) can promote breast cancer development.  The motion should be denied in its entirety because, as Plaintiffs and their experts have acknowledged before, there is reliable scientific evidence to support both opinions for the purposes of Rule 702 and *Daubert*.[1]

### SMOKING IS A RISK FACTOR

Plaintiffs' motion to exclude expert testimony that smoking is a breast cancer risk factor should be denied for two reasons: (1) the Court determined in the *Rush* trial that there is sufficient, reliable scientific evidence of a positive association between smoking and breast cancer to permit the experts to consider smoking a risk factor, and (2) a considerable body of published, peer-reviewed studies (in addition to those already considered by the Court) further establishes the scientific reliability of this association.

*First*, this challenge was raised and resolved in the *Rush* case, where the Court preliminarily barred reference to smoking, then denied the plaintiff's motion *in limine* when

---

[1]   This opposition is on behalf of Wyeth and Pharmacia & Upjohn Company LLC.

presented with (i) Dr. Colditz's testimonial admission concerning smoking as a breast cancer risk factor and (ii) a series of articles in the medical literature also treating smoking as a risk factor.

To recap that history, which begins in the *Reeves* case, the plaintiff filed two motions *in limine* seeking to preclude (1) references to certain risk factors (such as left-handedness), which, according to the plaintiff, lacked scientific support, and (2) references to breast cancer risk factors inapplicable to the plaintiff.[2] By Order, dated July 15, 2006, this Court stated "[i]f Wyeth's qualified experts have credibly supported alternative causes of Plaintiff's type of breast cancer then it appears clear that they should be permitted to speak to this," and referred both motions to Magistrate Judge Jones.[3] At the July 21, 2006 hearing before Magistrate Judge Jones, the plaintiff's counsel acknowledged that "we don't have a problem with recognized [risk factors], accepted, supported by science, because those have to be considered even if they don't apply to Mrs. Reeves."[4] Counsel further stated "I think that if you have peer-reviewed publications that compare and list recognized risk factors that are recognized and accepted and I . . . don't think it would be very hard to see which ones those are, some of the ones . . . our experts have relied on."[5]

Magistrate Judge Jones denied the plaintiff's motion to exclude references to certain risk factors, while instructing the parties "to agree on a limiting instruction describing known risk

---

[2] Pls.' Mem. in Supp. of Mot. *in Limine* No. 8 to Preclude Wyeth Counsel and Its Experts From Speculating On Other Causes of Breast Cancer That Have No Reliable Scientific Support [*Reeves* Docket No. 187]; Pls.' Mem. in Supp. of Mot. *in Limine* Nos. 13-38 [*Reeves* Docket No. 194].

[3] Order (July 21, 2006) at 3 [*Reeves* Docket No. 251] (Ex. 1).

[4] Transcript of Hearing (July 21, 2006) [*Reeves* Docket No. 321] at 54:15-19 (quoting Mr. Booth) (Ex. 2).

[5] *Id.* at 54:25-55:5.

factors and biological plausibility."[6]  In response, the plaintiff (represented by plaintiff's counsel here) conceded that reference could be made to the following as risk factors for breast cancer:

- Age
- Race
- Gender
- Family history of breast cancer
- Previous hyperplasia
- Breast cancer gene
- Early onset of menstruation
- Late menopause
- Delayed or no childbearing
- Obesity
- Alcohol consumption
- Fat intake (in childhood)
- Sedentary lifestyle
- Higher socioeconomic status
- Placental weight of children
- Stress
- Residence in an urban areas
- Residence in North America or Northern Europe
- Flying in airplanes
- Night shift work
- Left-handedness
- Use of antibiotics.[7]

Significantly, for eight of these risk factors, the scientific evidence consisted solely of *one* or *two* articles in the medical literature reporting an association between the risk factor and breast cancer.  (As we note below, the association between smoking and breast cancer is supported by at least *thirteen* articles, plus a statement by the FDA.)

---

[6] Order (July 26, 2006) at 2 [*Reeves* Docket No. 287] (Ex. 3).  At the same time, Magistrate Judge Jones took the other motion regarding inapplicable risk factors under advisement and directed the parties to submit supplemental briefing with respect to the scientific evidence underlying each proposed risk factor.  Wyeth's supplemental brief pointed out – and we argued in further meeting and conferring with plaintiff's counsel – that plaintiff's own experts, Drs. Klimberg and Waldron, recognized a number of the risk factors challenged by the motions *in limine*.

[7] Pls.' Suppl. Brief on Pl.'s Mot. in Limine No. 32 [*Reeves* Docket No. 312] at 2.

In *Rush v. Wyeth*, the plaintiff filed a motion *in limine* (No. 43) specifically seeking to preclude references to smoking as a risk factor for breast cancer.  The Court preliminarily granted the motion, stating that "I'm going to exclude smoking at this point unless you can show me some stronger testimony."[8]  And Wyeth did just that.  In the December 18, 2006 deposition to preserve his testimony, Wyeth questioned Dr. Graham Colditz about scientific studies, including his own, that recognize smoking as a risk factor for breast cancer:

> Q. And there is also literature that finds that breast cancer risk is especially increased when smoking started at or around the time a girl goes through puberty; is that right?
>
> A. Well, there are studies that have tried to look at the exposure ideally between puberty and first pregnancy, but that is one of the hypotheses that's been addressed, yes.
>
> Q. Well, and ***you, yourself, have addressed the opinion that smoking early in youth may modestly increase the risk of breast cancer as some studies have suggested, correct***?
>
> A. ***Correct***.[9]

Wyeth filed a supplemental submission setting forth Dr. Colditz's testimony along with four articles (two of which were either edited or authored by Dr. Colditz) that recognized smoking as a risk factor for breast cancer.[10]  Wyeth argued – and the Court agreed – that the scientific evidence warranted testimonial discussion of smoking as a risk factor.[11]

---

[8] Transcript of Hearing on Motions *in Limine* (Oct. 26, 2006) [*Rush* Docket No. 384] at 205:15-16 (Ex. 4); Order (Dec. 27, 2006) [*Rush* Docket No. 419] (Ex. 5) at 9 ("References to smoking will not be permitted unless Defendant can show me heavier evidence than they presented during the hearing referenced above.").

[9] Dep. of Dr. Graham Colditz (Dec. 18, 2006) at 197:19-198:10 (emphasis added) (Ex. 6).

[10] *Healthy Women, Healthy Lives* 99 (Susan E. Hankinson, Graham Colditz, JoAnn Manson and Frank Speizer, eds., 2001) ("Smoking early in youth may modestly increase the risk of breast cancer, as some studies have suggested.") (Exhibit 7); Wael K. Al-Delaimy, Eunyoung Cho, Wendy Y. Chen, Graham Colditz, and Walter C. Willet, *A Prospective Study of Smoking and Risk of Breast Cancer in Young Adult Women*, Cancer Epidemiol. Biomarkers

The scientific evidence is even stronger, in fact, than we indicated in our *Rush* supplemental submission. As early as 1995, Dr. Colditz observed in a review of the literature that "several studies that have examined age at commencement of smoking have demonstrated an elevation in [breast cancer] risk for early initiators."[12] In 1997, the FDA recognized smoking as a risk factor for breast cancer.[13] In 2002, reporting on the Nurses' Health Study, Dr. Colditz said that "smoking is a plausible risk factor for breast cancer" and found that women who had smoked for at least five years before their first full-term pregnancy had an increased risk of breast cancer.[14] Also in that year, a literature review determined that various studies showed "an increased breast cancer risk with smoking long duration, smoking before a first full-term

---

Prev. Vol. 13(3): 398-404 (2004) (Exhibit 8); Henry J. Lin, *Smokers and Breast Cancer: "Chemical Individuality" and Cancer Predisposition*, JAMA Vol. 276(18): 1511-1512, 1511 (1996) ("[S]moking appeared to increase the risk for breast cancer 4-fold among postmenopausal slow acetylators.") (Exhibit 9); Christine B. Ambrosone, et al., *Cigarette Smoking, N-Acetyltransferase 2 Genetic Polymorphisms, and Breast Cancer Risk*, JAMA Vol. 276(18): 1494-1501 (1996) ("[Breast cancer risk] was almost 7 times greater for women who had smoked more than a pack a day 20 years previously if they were slow vs rapid acetylators . . . , and risk associated with beginning smoking at or before the age of 16 years was more than 4 times greater for slow vs rapid acetylators . . . .") (Exhibit 10). Scroggin began smoking one to one-half packs of cigarettes daily from the age of twenty-one until she was fifty-eight. Hill did not smoke.

[11] Order (Jan. 19, 2007) [*Rush* Docket No. 501] at 2 ("References to smoking as a risk factor for breast cancer will be permitted.") (Ex. 11).

[12] Graham Colditz et al., *Models of Breast Cancer Show That Risk is Set by Events of Early Life: Prevention Efforts Must Shift Focus*, Cancer Epidemiol. Biomarkers and Prevention Vol. 4: 567-71, 569 (1995) (Ex. 12).

[13] Medical Officer's Original Review of Efficacy Supplement, NDA 20,527/S-006 (Dec. 22, 1997) at 10 ("With long-term use, greater than 10 years, there may be a slightly increased risk of developing breast cancer but other biological factors ([i.e.], family history, diet, smoking, etc[.]) must be considered (Ex. 13).

[14] Kathleen Egan, Meir Stampfer, David Hunter, Susan Hankinson, Bernard Rosner, Michelle Holmes, Walter Willett, and Graham Colditz, *Active and Passive Smoking in Breast Cancer: Prospective Results from the Nurses' Health Study*, Epidemiology Vol. 13: 138-45, 138, 143 (2002) (Ex. 14).

5

pregnancy, and passive smoking," and specifically noted that "the largest and most recent study to date . . . found a positive association with smoking before a first full term pregnancy" in women like Scroggin.[15] Three separate cohort studies, including the California Teachers Study, have observed an increased risk of breast cancer associated with smoking.[16] Then, in 2006, the Women's Health Initiative investigators acknowledged smoking as being "associated with [an] increased breast cancer risk" and adjusted their preliminary breast cancer data for the effects of smoking (along with other known confounders such as age, family history of breast cancer, and alcohol use).[17]

---

[15] Paul Terry et al., *Cigarette Smoking and the Risk of Breast Cancer in Women: A Review of the Literature*, Int. J. Cancer Vol. 11: 953-971, 953, 963 (2002) (Ex. 15).

[16] Inger Gram et al., *Breast Cancer Risk Among Women Who Start Smoking as Teenagers*, Cancer Epidemiol. Biomarkers & Prevention 14(1): 61-66, 64 (2005) ("This study finds that women who start smoking prior to menarche or a first birth and continue to smoke for at least 20 years have a small increase in breast cancer risk. A causal interpretation of these results is supported by the presence of a consistent dose-response association between various measures of smoking exposure and breast cancer risk.") (Ex. 16); Peggy Reynolds et al., *Active Smoking, Household Passive Smoking, and Breast Cancer: Evidence From the California Teachers Study*, J. National Cancer Inst. Vol. 96(1): 29-37, 33 (2004) ("[We] observed an elevated risk of breast cancer associated with active smoking that increased with smoking intensity and, to a lesser extent, duration.") (Ex. 17); Paul Terry et al., *Cigarette Smoking and Breast Cancer Risk: A Long Latency Period?*, Int. J. Cancer Vol. 100: 723-728, 725 (2002) ("[We] found a positive association between cigarette smoking and breast cancer risk, which was driven mainly by women who had smoked for 40 years or more.") (Ex. 18). At least two earlier case-control studies found an increased risk of breast cancer associated with smoking. Julie Palmer et al., *Breast Cancer and Cigarette Smoking: A Hypothesis*, Am. J. Epidemiology Vol. 134(1):1-13, 7 (1991) ( "Women who had smoked 25 or more cigarettes per day were estimated to have a 20 percent higher risk than women who had never smoked.") (Ex. 19); Louise Brinton et al., *Cigarette Smoking and Breast Cancer*, Am. J. Epidemiology Vol. 123(4): 614-23, 620 (1986) ("[O]ur results supported a slightly increased risk (RR = 1.2)") (Ex. 20).

[17] Garnet Anderson et al., *Prior hormone therapy use and breast cancer risk in the Women's Health Initiative randomized trial of estrogen plus progestin*, Maturitas Vol. 55(2): 1-13, 4 (2006) ("Adjusting for the main effects of age, race/ethnicity, body mass index, physical activity, smoking, alcohol use, parity, age at first birth, use of oral contraceptives, family history of breast cancer, family history of fractures, mammography use and presence of

Plaintiffs' current motion, although styled as a *Daubert* motion rather than a motion *in limine*, is merely an attempt to relitigate the issue resolved in *Rush*. The motion does not say that Dr. Colditz has changed his mind, nor that the other investigators whose studies we provided to the Court in the *Rush* case have changed their minds, nor that superseding studies have since been done that resolve the matter. Plaintiff's motion asserts only that the association between smoking and breast cancer has yet to find "clear" or "general" acceptance among the scientific community.[18]  *Daubert* makes clear that "[n]othing in the text of [Rule 702] establishes 'general acceptance' as an absolute prerequisite to admissibility"[19] and that "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty . . . ."[20]  Indeed, "[t]he role of the Court when ruling on a *Daubert* motion is not to resolve the scientific debate, but to determine whether [defendant's] experts have a reliable basis for their testimony."[21]  Thus, the fact that scientists continue to research the relationship between smoking and breast cancer has no bearing on the scientific reliability of existing, peer-reviewed studies showing a positive association.

---

moderate to sever[e] vasomotor symptoms did not substantially alter this risk estimate . . . .") (Ex. 21).

[18]  Pls.' Mem. in Supp. of Mot. to Exclude Defs.' Expert Testimony at 5-6.

[19]  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993).

[20]  *Id.* at 590.

[21]  *Palmer v. Asarco Inc.*, 2007 WL 2405660, at *6 (N.D. Okla. Aug. 13, 2007) (permitting the plaintiff's expert's testimony even where the defendants demonstrated "that there is room for debate within the relevant scientific community").

There is considerably more scientific evidence that smoking is a risk factor for breast cancer than for a number of the risk factors to which plaintiff's counsel stipulated in the *Reeves* trial.[22] In sum, there is no principled reason to disturb the Court's prior determination.[23]

### OBESITY (AND LEPTIN) IS AN ACCEPTED RISK FACTOR

Plaintiffs' motion to preclude Dr. Kaufman from testifying that obesity (specifically, leptin – an obesity protein) can promote breast cancer development should be denied for two reasons: (1) reliable scientific evidence supports the proposition that obesity (specifically, leptin) promotes breast cancer, and (2) Plaintiffs failed to challenge Dr. Kaufman's obesity opinions during his deposition despite every opportunity to do so.

*First*, Dr. Kaufman's opinions accord with the generally accepted view that obesity is a significant risk factor for breast cancer.[24] Plaintiffs' expert, Dr. Elizabeth Naftalis has admitted that "[o]besity has been shown to be a factor in contributing to a woman developing breast

---

[22] *See People v. Soto*, 981 P.2d 958, 976 (Cal. 1999) (considering the "extensive literature in peer-reviewed journals" supporting expert's opinion in finding it admissible).

[23] Even if Plaintiffs' *Daubert* challenge had any merit (which it does not), evidence regarding Scroggin's nearly forty-year smoking history would still be relevant to show (1) Scroggin's willingness to accept risks greater than those posed by hormone therapy (as presented in the labels); and (2) Scroggin's particular susceptibility to osteoporosis and, therefore, greater need for hormone therapy, given the association between smoking and osteoporosis.

[24] Dr. Kaufman opined:

> In regards to Ms. Scroggin's obesity and diabetic condition, it is noted in the literature that biologically active substances produced by fat cells (adipokones) have been shown to promote breast cancer development. ***Adipose [fat] tissue is a source of estrogens, insulin and insulin-like growth factors, all of which are believed to be involved in mammary tumorigenesis. One such adipokine, leptin, has been shown to increase breast cancer risk in postmenopausal women***, and it has been demonstrated in animal studies that elevated leptin levels, as observed in obesity, promotes the development of breast carcinoma.

Expert Report of Michael Kaufman, MD (July 18, 2007) at 5 (emphasis added) (Ex. 22).

8

cancer."[25]  She also acknowledged that studies show that patients with "obesity ha[ve] a higher risk of breast cancer, and the theory was because obese patients have higher circulating hormones."[26]  Dr. Naftalis knows this to be true because peer-reviewed and published studies (including those specifically identified by Dr. Kaufman in his references)[27] indicate that fat cells can act to increase levels of growth hormone, insulin, and leptin, all of which may promote breast cancer cell development.

The animal studies cited by Dr. Kaufman serve as additional support for the view that leptin promotes breast cancer development.  Contrary to Plaintiffs' suggestion that animal studies are wholly irrelevant to human subjects,[28] the Eighth Circuit has specifically cautioned that  "[w]e do not discount the value of animal studies *per se*."[29]  Nor is there any requirement "that published epidemiological studies supporting an expert's opinion exist in order for the opinion to be admissible" even where the opinion relies, in part, on animal studies.[30]  The cases cited by Plaintiffs stand merely for the proposition that a *plaintiff's* expert cannot rely *solely* on

---

[25] Deposition of Elizabeth Naftalis, MD (July 10, 2007) at 65:17-19 (Ex. 23); *see also id.* at 66:16-17.

[26] *Id.* at 70:12-15.

[27] References attached to Expert Report of Michael Kaufman, MD (Ex. 24); Rudolf Kaaks, *Nutrition, hormones and breast cancer: Is insulin the missing link?*, Cancer Causes and Control, 1996 (7): 605-625 (Ex. 25); Eva Surmacz, *Obesity hormone leptin: a new target in breast cancer?*, Breast Cancer Research 2007 (9): 301 (Ex. 26).

[28] *See* Pls.' Mem. in Supp. of Mot. to Exclude Defs.' Expert Testimony at 8.

[29] *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 991 (8th Cir. 2001).

[30] *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929-31 (8th Cir. 2001) (affirming admissibility of expert's opinion, which was based in part, on animal studies, and did not include published epidemiological support).

animal studies in carrying the burden of proof on causation.[31]  None of the cases bar an expert from relying on animal studies as one of several bases for his opinions.  As a pathologist, Dr. Kaufman was entitled to rely on these studies in forming his opinions that obesity (and specifically, leptin) can significantly increase a woman's breast cancer risk.[32]

*Second*, Plaintiffs had every opportunity during Dr. Kaufman's deposition to explore his opinions about obesity, but chose not to do so.[33]  Counsel marked Dr. Kaufman's list of references – including the articles about obesity – as a deposition exhibit,[34] but for whatever reason did not ask him any questions about the portion of his report that expressly discussed obesity or about the articles that supported that opinion.  We can understand that Plaintiffs' trial counsel now wish that counsel who examined Dr. Kaufman had taken more time and asked more questions.[35]  But that is not reason why his opinion should be excluded.  Wyeth complied with Rule 26 by plainly setting forth his opinion and providing the bases for that opinion.

---

[31] *See Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 195 (5th Cir. 1996); *Renaud v. Martin Marietta Corp., Inc.*, 972 F.2d 304, 307 (10th Cir. 1992) (noting that animal studies are "useful only after plaintiffs have met their burden on the exposure issue by some other means"); *Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823, 831 (D.C. Cir. 1988) (noting that expert's *in vivo* studies provided a clue of teratogenicity, but that "[s]ince [the plaintiffs] had the burden of proving that Bendectin causes birth defects, the law cannot tolerate a presumption of teratogenecity"); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 546 (W.D. Pa. 2003); *Siharath v. Sandoz Pharm. Corp.*, 131 F. Supp. 2d 1347, 1366 (N.D. Ga. 2001).

[32] *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1434 (5th Cir. 1989) ("Experts are entitled to rely on studies in forming their opinions.") (citing cases); *Mazur v. Merck & Co., Inc.*, 742 F. Supp. 239, 264 (E.D. Pa. 1990) ("A reasonable expert, in the absence of his own study, could turn to the medical literature in the relevant field as the basis for reaching an opinion.").

[33] The only question about obesity posed to Dr. Kaufman by Plaintiffs' counsel was about his definition of obesity.  Dep. of Dr. Michael Kaufman (July 31, 2007) at 106:11-107:11 (Ex. 27).

[34] *Id.* at 21:7-16.

[35] Mr. Brockman completed the questioning in 2.5 hours.

10

Dr. Kaufman's obesity opinions are in accordance with the general consensus of the medical community and rely on scientifically reliable studies. The Court therefore should deny Plaintiffs' motion to preclude Dr. Kaufman from testifying regarding obesity and the risk of breast cancer.

In sum, the jury is entitled to hear that smoking and obesity are risk factors for breast cancer.

Respectfully submitted,

     / s /  F. Lane Heard III
John W. Vardaman, Jr.
Stephen L. Urbanczyk
F. Lane Heard III

  WILLIAMS & CONNOLLY LLP
  725 12th Street, NW
  Washington, DC 20005-5901
  (202) 434-5000

Lyn P. Pruitt, Bar No. 84121

  MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, PLLC
  425 West Capitol Avenue, Suite 1800
  Little Rock, AR 72201-3525
  (501) 688-8800
  *lpruitt@mwsgw.com*

*Lead Counsel for Defendants*

DATED:  September 5, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September 2007 a true and correct copy of the foregoing Opposition to Plaintiffs' Motion to Exclude Defendants' Expert Testimony was electronically filed with the Clerk of Court using the CM/ECF system, and a true and correct copy sent by e-mail to the parties listed below.

Joshua H. Brockman
Zoe B. Littlepage
Littlepage Booth - Houston
1012 West Alabama Street
Houston, TX 77006
Email: josh@littlepagelaw.com
       zoe@littlepagebooth.com

Kevin A. Crass
Elizabeth Robben Murray
Friday, Eldredge & Clark, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201-3493
Email: crass@fec.net
       murray@fec.net

Jay Phillip Mayesh
Steven J. Glickstein
Alan E. Rothman
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022-3598
Email: maoedar@kayescholer.com
       arothman@kayescholer.com

/s/   F. Lane Heard III
F. Lane Heard III

WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC 20005-5901
(202) 434-5000
*lheard@wc.com*