IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>PREMPRO PRODUCTS LIABILITY LITIGATION | MDL Docket No. 4:03CV1507 WRW<br><br>*Hill v. Wyeth et al.*,<br>Case No. 4-05-CV-0546-WRW<br><br>*Scroggin v. Wyeth et al.*,<br>Case No. 4-05-CV-1169-WRW |

**REPLY IN SUPPORT OF
*DAUBERT* MOTION TO EXCLUDE EXPERT TESTIMONY
OF DR. DONALD AUSTIN**

The Opposition goes on so long to so little purpose. The three issues can be addressed directly and simply.

**1.
Circumscribing Dr. Austin's Causation Opinions**

In the *Reeves* and *Rush* cases, the Court granted Wyeth's *Daubert* motion to bar Dr. Austin from testifying that hormone therapy causes breast cancer, because any such opinion would have been based on ecological data alone. To the extent that Dr. Austin still seeks to offer any causation opinion based solely on trends in cancer incidence, the Court should continue to bar such testimony. Although the Opposition goes on and on for nine pages about this first challenge, it ultimately agrees and pledges that "Dr. Austin will not offer general causation opinions that are based upon the SEER database <u>alone</u>."[1]

---

[1] Plaintiffs' Opposition to Wyeth's Motion to Limit the Testimony of Dr. Donald Austin ("Pl. Opp.") [*Scroggin* Docket No.172; *Hill* Docket No. 151] at 8.

The Opposition mischaracterizes our arguments. We did not "accuse[] Dr. Austin of contradicting his earlier opinions on the role of ecological data." Pl. Opp. at 12 (citing page 3 of Wyeth's Memorandum ("Wyeth's Mem.") [*Scroggin* Docket No. 104; *Hill* Docket No. 88]). We said that Dr. Austin *would* contradict his prior statements about ecological data *if* he now sought "to reverse field and offer causation opinions based solely on ecological

To the extent that Dr. Austin bases his opinions on other data, we will address those opinions in cross-examination.  Forgive us if we are not impressed with the lengthy recitation of Dr. Austin's causation opinion, which ends with the assertion that it is "based upon a wealth of information," including "[m]ultiple published medical articles," the proof of which is three articles authored by another of Plaintiffs' retained experts, Dr. Graham Colditz; the IARC listing, which is not a medical article at all; and an article by Dr. Brian MacMahon, a former colleague of Dr. Colditz's.

## 2.
## Barring Dr. Austin's Biology-Based Opinions

Page 1 of the Opposition describes Dr. Austin as "among the world's most renowned epidemiologists," and page 3, in setting forth his qualifications, describes him as "a physician and epidemiologist."  But when the discussion turns to Wyeth's challenge to his biology-based opinions, the Opposition suddenly claims that he is "a cancer cell biologist"[2] and that he "has expertise in cell biology,"[3] although both claims appear to be based on nothing more than the fact that "Dr. Austin has a Masters Degree in microbiology."[4]

Contrary to what the Opposition says, however, Wyeth did not ignore his master's degree.  We quoted Dr. Austin's testimony that he received his master's degree in 1970-71 and that he understands cell biology "at least the part up until I stopped really updating myself on

---

data."  Wyeth's Mem. at 3.  Nor did we "cleverly distort Dr. Austin's testimony . . . to suggest that ecological studies provide no evidence of causation."  Pl. Opp. at 12.  We quoted plaintiffs' counsel, who told the Court that ecological studies are not designed to prove causation.  Wyeth's Mem. at 3.

[2]   Pl. Opp. at 16.

[3]   *Id*. at 17.

[4]   *Id*. at 15.

that." But he stopped updating himself in the field, he admitted, when he got his degree **35 years ago**.[5] The Opposition does not explain how it can call Dr. Austin a "cancer cell biologist," or how the Court can consider him an expert about the cellular process of cancer development, when he disclaims any expertise:

> Q: You would never hold yourself out as a cell biologist today?
>
> A: I would not.[6]

Given that he does not consider himself an expert in cell biology and lacks the current familiarity with developments in the field to claim that expertise (if he were disposed to do so), he lacks the necessary qualifications to offer opinions about the cellular processes of cancer development. As he has conceded, that is a biologist's realm and beyond his expertise:

> Q: . . . [T]hat's not the normal role for an epidemiologist to comment about the cellular process that may cause cancer to go from one point to another on a continuum?
>
> A: . . . That's usually a biologist's task.
>
> Q: ***And that's beyond your expertise, at least today*** . . .
>
> A: ***That's correct***.[7]

The Opposition simply ignores this conclusive concession.[8]

---

[5] Deposition of Dr. Donald Austin (Mar. 13, 2007) ("Austin Dep.") at 126:20-127:8 (attached as Ex. 2 to Wyeth's Mem.).

[6] *Id*. at 137:1-14.

[7] *Id*. (emphasis added).

[8] It is no answer that the former New Jersey judge would have permitted Dr. Austin to offer these biology-based opinions. He was not bound by *Daubert*. Nor can he confer, for purposes of these cases, credentials or experience that Dr. Austin does not have.

Accordingly, the Court should exclude both of Dr. Austin's biology-driven opinions: (1) that hormone therapy wakes up "dormant" tumors; and (2) that endometrial and breast tissue are alike in the way they respond to estrogen.

### 3.
### Barring Dr. Austin's Litigation-Driven Opinions

The Opposition loses sight of the history of Dr. Austin's opinion regarding when Wyeth should have detected a trend regarding lobular cancer. The problem is not a broken promise – i.e., that Dr. Austin "testified he might publish his study, but has not done so."[9] This *Daubert* challenge has its basis in the admission of Dr. Buckley (Dr. Austin's co-author and the person who apparently did most of the work) that the analysis they conducted was of a kind that he had never done outside of the litigation and that he had never seen published in the peer-reviewed literature. It was in light of this damaging admission—sufficiently damaging that plaintiffs have never again designated Dr. Buckley as an expert—that Dr. Austin represented that, even though the study may have been commenced for purposes of litigation, he and Dr. Buckley intended to submit it for publication.

That Dr. Austin has not done so, compounded by his representation to California authorities that the litigation report was a "manuscript" so as to secure data that would otherwise have been off-limits to him as a litigation consultant, is reason to go back to square one and reconsider whether Dr. Austin's retrospective methodology is a reliable and accepted one. The Opposition does not offer any evidence that would satisfy Plaintiffs' burden to prove that the methodology is sound. The Opposition simply makes a series of self-serving assertions about Dr. Austin's credentials and good intentions, again summarizes his opinion (as if it were self-validating), and concludes by assuring the Court that "Dr. Jody Lapidus, a biostatistician and

---

[9] Pl. Opp. at 18.

professor at OHSU, validated the study design and verified the statistical formula used to ensure that the methods used in the study were sound and appropriate."[10] But we have only counsel's say-so—not evidence—that this is true. Plaintiffs have not presented any affidavit or report from Dr. Lapidus, nor even a curriculum vitae to evaluate whether she has the qualifications and expertise to evaluate the study design. Likewise, Plaintiffs have failed to show what information she was provided, what methodology she followed, what comments she made or what opinions she rendered. These failings take on added significance, because Dr. Lapidus is not a neutral reviewer, but Dr. Austin's colleague.[11]

The revision and evaluation of expert opinions is a two-way street. Just as the experts may revise and update their opinions in light of experience and new developments, so, too, the Court's *Daubert* evaluation of those opinions, old and new, is subject to reconsideration in light of experience and new developments – in this instance, the fact that Dr. Austin has not submitted his report for publication (and the peer review that would result from such a submission) despite his earlier testimony that he intended to do so.

## Conclusion

*Daubert* is not an all-or-nothing proposition. That Dr. Austin may testify as to some matters does not entitle him to testify about biology-based opinions or those based on a retrospective methodology contrived for purposes of litigation.

---

[10] Pl. Opp. at 21.

[11] In all likelihood, counsel compensated her directly or through Dr. Austin.

       Respectfully submitted,

       /s/    F. Lane Heard III
       John W. Vardaman, Jr.
       Stephen L. Urbanczyk
       F. Lane Heard III

        WILLIAMS & CONNOLLY LLP
        725 12th Street, NW
        Washington, DC 20005-5901
        (202) 434-5000

       Lyn P. Pruitt, Bar No. 84121

        MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, PLLC
        425 West Capitol Avenue, Suite 1800
        Little Rock, AR 72201-3525
        (501) 688-8800
        *lpruitt@mwsgw.com*

       *Attorneys for Wyeth*

DATED:  September 12, 2007

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September 2007 a true and correct copy of the foregoing Reply in Support of *Daubert* Motion to Exclude Expert Testimony of Dr. Donald Austin was electronically filed with the Clerk of Court using the CM/ECF system, and a true and correct copy sent by e-mail to the parties listed below.

Joshua H. Brockman
Zoe B. Littlepage
Littlepage Booth - Houston
1012 West Alabama Street
Houston, TX 77006
Email: josh@littlepagelaw.com
      zoe@littlepagebooth.com

Kevin A. Crass
Elizabeth Robben Murray
Friday, Eldredge & Clark, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR 72201-3493
Email: crass@fec.net
      murray@fec.net

Jay Phillip Mayesh
Steven J. Glickstein
Alan E. Rothman
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022-3598
Email: maoedar@kayescholer.com
      arothman@kayescholer.com

      /s/   F. Lane Heard III
F. Lane Heard III

  WILLIAMS & CONNOLLY LLP
  725 12th Street, NW
  Washington, DC 20005-5901
  (202) 434-5000
  *lheard@wc.com*