**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | MDL Docket No. 4:03CV1507-WRW |
| | : | 4:04CV01169 |
| **PREMPRO PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | |
| | : | |
| | : | |
| **DONNA SCROGGIN** | : | **PLAINTIFF** |
| | : | |
| **v.** | : | |
| | : | |
| **WYETH, et. al.** | : | **DEFENDANTS** |

**ORDER**

Pending are Defendants' Motion to Exclude Expert Testimony of Dr. Donald Austin (Doc. No. 103), Upjohn's Motion to Exclude the Testimony of David N. Fuller (Doc. No. 64), and Upjohn's Motion to Exclude the Testimony of Dr. Suzanne Parisian (Doc. No. 66). Oral argument was heard on November 5-6, 2007.

**I.    STANDARD**

**A.    Burden of Proof**

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[1]

---

[1] Fed. R. Evid. 702.

When a party proffers an expert witness, deciding whether Rule 702 is satisfied is a preliminary issue governed by Federal Rule of Evidence 104(a).[2]  Rule 104(a) requires the proponent of evidence to establish its admissibility by a preponderance of the evidence.[3]  In determining admissibility, the court is not bound by any of the rules of evidence, except with regard to privilege.[4]

### B.   Legal Standard for Admissibility

The central inquiry under Rule 702 is whether the proffered expert's testimony is sufficiently reliable.[5]  The trial court serves a gatekeeping function, ensuring that any expert testimony is reliable and relevant.[6]

To be admissible, expert testimony must satisfy the two prongs of Rule 702.[7]  First, it must be based on scientific, technical, or other specialized knowledge.[8]  If the testimony is scientific, it must be grounded in the methods and procedures of science.[9]  Likewise, "knowledge" requires more than a subjective belief or an unsupported speculation, requiring instead an appropriate level of validation.[10]  Second, the testimony must be relevant, in that it

---

[2]*U.S. v. Martinez*, 3 F.3d 1191, 1196 n.10 (8th Cir. 1993).

[3]*Bourjaily v. U.S.*, 483 U.S. 171 (1987).

[4]Fed. R. Evid. 104(a).

[5]*First Nat'l Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005).

[6]*Id.*

[7]*U.S. v. Cawthorn*, 429 F.3d 793, 799 (8th Cir. 2005).

[8]*Id.*

[9]*Id.*

[10]*Id.* at 799-800 (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993)).

2

must help the trier of fact either understand the evidence or determine a fact in issue.[11] The burden of establishing relevancy and reliability rests on the proponent of the expert testimony.[12]

Courts have used a variety of factors to determine the reliability of proffered expert testimony. The most frequently discussed factors are those derived from the Supreme Court's opinion in *Daubert*, where the Court established that the trial court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.[13]

Because the inquiry is "flexible and fact-specific, a court should use, adapt, or reject *Daubert* factors" as needed based on the facts of a particular case.[14]

The most recent amendments to Rule 702 added three general standards for courts to use in determining the reliability and relevance of proffered expert testimony. First, the proffered testimony must be based on sufficient facts or data.[15] Second, it must be the product of reliable principles and methods.[16] Third, the expert must have applied those principles and methods reliably to the facts of the case.[17]

---

[11]*Id.* at 799.

[12]*Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278-78 (5th Cir. 1998).

[13]*Benham*, 423 F.3d at 861 (citing *Daubert*, 509 U.S. at 593-94).

[14]*Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005).

[15]Fed. R. Evid. 702(1).

[16]Fed. R. Evid. 702(2).

[17]Fed. R. Evid. 702(3).

The focus is not on the expert's conclusion, but on the methodology.[18] The proponent of the testimony "need not prove . . . that the expert's testimony is correct, but . . . must prove by a preponderance of the evidence that the testimony is reliable."[19] Determining the validity of an expert's conclusions is the duty of the finder of fact.

## II. ANALYSIS

### A. Defendants' Motion to Exclude Expert Testimony of Dr. Donald Austin (Doc. No. 103)

Plaintiff's general causation expert, Dr. Donald Austin, will testify that HRT promotes cells to become cancerous, and, with proper monitoring, Defendants could have and should have detected a signal in the 1980s that HRT may have been causing a disproportionate increase in certain types of breast cancer. His report reads: "If the available national cancer data had been monitored for changes in breast cancer incidence, could an increase in [the incidence of] ILC [invasive lobular carcinoma] have been detected, and if so, when?"[20]

Defendants want to bar the following testimony from Dr. Austin: (1) testimony, based on ecological data alone, that HRT causes breast cancer; (2) testimony regarding the development of breast cancer at the cellular level; (3) testimony that endometrial tissue and breast tissue respond the same way to estrogen; and (4) opinions about ILC detection in the 1980s.

Based on the findings of fact and conclusions of law below, Defendants' Motion to Exclude Expert Testimony of Dr. Donald Austin (Doc. No. 103) is GRANTED in PART and DENIED in PART.

---

[18]*Moore*, 151 F.3d at 275-76.

[19]*Id* at 276.

[20]Doc. No. 172, Ex. 4.

4

**1. Ecological Data Alone** -- Defendants contend that Dr. Austin should be prevented from making causation opinions based only on ecological data. Plaintiff agrees.

On the other hand, Defendant concedes any *Daubert* objections to Dr. Austin's causation opinions, if he relies on both ecological data and epidemiological data to support the opinions.[21] Since Plaintiff has presented sufficient evidence to establish that Dr. Austin relied on both ecological and epidemiological data when making his causation opinions, Defendants' motion is DENIED on this point

**2. Development of Breast Cancer at Cellular Level** -- Defendants assert that opinions on this subject are not in any of Dr. Austin's expert reports. I have been unable to determine if Plaintiff has responded to this issue. That said, Defendants' motion is GRANTED on this point, unless Plaintiff is able to identify (with appropriate citation) where this issue is addressed in Dr. Austin's report or direct me to case law that supports the proposition that it need not be in the report (where, for example, the opinion was discussed in depositions).

Defendants also assert that Dr. Austin should not be permitted to testify regarding cancer development at the cellular level, because he is not a cell biologist. Plaintiff responds that Dr. Austin is explaining basic cancer growth as an underlying basis for explaining his epidemiology opinion. Based on the representations made by Plaintiff in the hearing, it appears that Dr. Austin's opinion on this subject requires only a basic understanding of cell biology. Accordingly, Dr. Austin is qualified and may speak to this point, <u>if</u> Plaintiff meets her burden in the first paragraph of this section.

**3. Response of Endometrial and Breast Cancer Tissue to HRT** -- Defendants contend that Dr. Austin, as an epidemiologist, is not qualified to testify that endometrial tissue

---

[21]Doc. No. 104.

5

and breast tissue respond the same to HRT.  Defendants' motion is GRANTED, since Plaintiff has not demonstrated that Dr. Austin is qualified to deal with this subject.

**4.  ILC Detection and Litigation Driven Opinions --** Defendants assert that opinions about detecting ILC in the 1980s should be excluded, since Dr. Austin's methodology is not sound and the reports were never submitted for peer-review and publication.  In *Reeves v. Wyeth*, Judge Wilson ruled on the very same challenge:

> Wyeth's arguments on this point are standard *Daubert* challenges.  However, these challenges are insufficient, even when considered cumulatively.  First, "the fact of publication (or lack thereof) in a peer reviewed journal [is] . . . a relevant, though not dispositive, consideration."  Second, the fact that this research was conducted solely for this litigation, while noteworthy, is not fatal.  When an expert develops opinions "expressly for the purposes of testifying," the proponent is required to "come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'"  Here, Dr. Austin's objective evidence is the SEER database he reviewed when compiling the data regarding the number of breast cancer incidences.  As far as I can tell, Dr. Austin researched the database looking for a trend and reported the information that he discovered.  Additionally, I don't find anything scientifically infirm about compiling data.  It appears to me that the conclusions he makes are based on a review of the objective evidence in the database.[22]

Again, Plaintiff has presented sufficient evidence to pass a *Daubert* challenge, and Defendants' Motion is DENIED on this issue.

**B.     Upjohn's Motion to Exclude the Testimony of David N. Fuller (Doc. No. 64)**

David Fuller is Plaintiff's economic expert.  Plaintiff asserts that his testimony is "necessary to make the complicated world of financial analysis easy for jury to understand," and to explain "the financial importance of Provera to the Upjohn Defendants."[23]  Upjohn contends

---

[22]*In re Prempro, Reeves v. Wyeth*, No. 4:05-CV-00163, 2006 WL 2314062, at *4 (E.D. Ark. August 21, 2006).

[23]Doc. No. 179.

that Mr. Fuller simply offers a factual summary of sales information and personal opinion, both of which are irrelevant and of no help to the jury.[24]

Defendants' Motion is GRANTED. However, if Defendants raise the issue of not having the financial resources to pay for a study the scale of WHI, Plaintiff may elicit testimony from a witness (a non-expert, because an expert is not needed) to rebut Defendants' position.

    **C.**    **Upjohn's Motion to Exclude the Testimony of Dr. Suzanne Parisian (Doc. No. 66)**

Dr. Parisian, Plaintiff's regulatory expert, intends to testify that over the years doctors began prescribing Provera in conjunction with estrogen to treat hormone therapy; Upjohn was aware of and encouraged these prescribing habits; and that Upjohn's knowledge, as well as their promotion of Provera for this use, triggered a duty to test Provera for such use.

Upjohn's Motion to Exclude the Testimony of Dr. Suzanne Parisian (Doc. No. 66) is GRANTED in PART and DENIED in PART, as set forth below:

    **1.**    **Relevance** -- Upjohn contends that Dr. Parisian's testimony regarding the advertising and promotion of Provera is irrelevant. I disagree.

A purely factual recitation of the history of Provera, and its progression as a drug to be used in conjunction with estrogen to treat menopausal symptoms is relevant to show the environment in which Upjohn operated. Use of the specific advertising or promotional pieces is not necessary to make this point. Plaintiff has conceded that Dr. Parisian will not give an opinion on Upjohn's intent or whether Upjohn's advertisement influenced either Plaintiff or any treating physician.

---

[24]Doc. No. 64.

Also Dr. Parisian's testimony is relevant, because she is attempting to show that off-label promotion, without testing, is a violation of pharmaceutical company's duty to use ordinary care. Upjohn's recitation of Arkansas law regarding whether a judge or jury determines duty does not support their conclusion. Certainly a drug company has a duty to use ordinary care when manufacturing a drug. However, Plaintiff's burden is to establish, for the finder of fact, what ordinary care is under the circumstances and whether Defendants breached their duty of ordinary care. Plaintiff's attempt to use Dr. Parisian to establish that the duty to test if part of the ordinary care required from pharmaceutical companies, is relevant to the claims in this case.

      **2.**    **Qualifications --** Upjohn's challenges to Dr. Parisian's qualifications are without merit.

      **3.**    **Methodology** -- Upjohn asserts that Dr. Parisian's opinions regarding the advertising and promotion of Provera are not the product of any scientific methodology.

Dr. Parisian has recited her experience in the FDA and the history of Provera, but she has not set out what standards or "standards of the industry" she relies on. As Judge Wilson requested November 1, 2007 Order,[25] Plaintiff must provide some citation to authority, whether it is legislative or historical, that Dr. Parisian relies on. I have not been able to find such a reference after reviewing her report in the record.[26] If Plaintiff can provide a specific reference to the standards relied upon by Dr. Parisian, I will reconsider this ruling and address the remaining issues raised in Upjohn's motion.

---

[25] Doc. No. 326.

[26] Doc. No. 66, Ex. A.

**D.     Supplementing the Record**

If Plaintiff chooses to supplement the record regarding the specific suggestions I've made above -- Austin's cellular level testimony and Parisian's methodology -- she should do so by 5 p.m., Tuesday, November 13, 2007.  No response will be necessary from Defendants.

IT IS SO ORDERED this 9th day of November, 2007.

                                                */s/ Henry L. Jones, Jr.*
                                                UNITED STATES MAGISTRATE JUDGE