**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | **MDL Docket No. 4:03CV1507-WRW** |
| | : | **4:04CV01169** |
| **PREMPRO PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | |
| | : | |
| | : | |
| **DONNA SCROGGIN** | : | **PLAINTIFF** |
| | : | |
| **v.** | : | |
| | : | |
| **WYETH, et. al.** | : | **DEFENDANTS** |

<u>**ORDER**</u>

Pending are Defendants' Motion to Exclude Expert Testimony of Dr. Robert Fincher (Doc. No. 105), Motion to Exclude Expert Testimony of Dr. Elizabeth Naftalis (Doc. No. 113), and Motion to Exclude Expert Testimony of Dr. Matthew Hollon (Doc. No. 109). Oral argument was heard on November 5-6, 2007, and the parties filed supplemental briefs and responses on November 9 and 11.[1]

Also at issue is Dr. Austin's testimony on the development of breast cancer at the cellular level, since Plaintiff filed a supplemental brief (Doc. No. 352).

**I.     STANDARD**

**A.     Burden of Proof**

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which reads:

---

[1]Doc. Nos. 342-345, 347.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[2]

When a party proffers an expert witness, deciding whether Rule 702 is satisfied is a preliminary issue governed by Federal Rule of Evidence 104(a).[3]  Rule 104(a) requires the proponent of evidence to establish its admissibility by a preponderance of the evidence.[4]  In determining admissibility, the court is not bound by any of the rules of evidence, except with regard to privilege.[5]

### B.      Legal Standard for Admissibility

The central inquiry under Rule 702 is whether the proffered expert's testimony is sufficiently reliable.[6]  The trial court serves a gatekeeping function, ensuring that any expert testimony is reliable and relevant.[7]

To be admissible, expert testimony must satisfy the two prongs of Rule 702.[8]  First, it must be based on scientific, technical, or other specialized knowledge.[9]  If the testimony is

---

[2] Fed. R. Evid. 702.

[3] *U.S. v. Martinez*, 3 F.3d 1191, 1196 n.10 (8th Cir. 1993).

[4] *Bourjaily v. U.S.*, 483 U.S. 171 (1987).

[5] Fed. R. Evid. 104(a).

[6] *First Nat'l Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005).

[7] *Id.*

[8] *U.S. v. Cawthorn*, 429 F.3d 793, 799 (8th Cir. 2005).

[9] *Id.*

scientific, it must be grounded in the methods and procedures of science.[10]   Likewise,

"knowledge" requires more than a subjective belief or an unsupported speculation, requiring

instead an appropriate level of validation.[11]   Second, the testimony must be relevant, in that it

must help the trier of fact either understand the evidence or determine a fact in issue.[12]   The

burden of establishing relevancy and reliability rests on the proponent of the expert testimony.[13]

      Courts have used a variety of factors to determine the reliability of proffered expert

testimony.  The most frequently discussed factors are those derived from the Supreme Court's

opinion in *Daubert*, where the Court established that the trial court may consider:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory
> or technique has been subjected to peer review and publication; (3) whether the
> theory or technique has a known or potential error rate and standards controlling the
> technique's operation; and (4) whether the theory or technique is generally accepted
> in the scientific community.[14]

Because the inquiry is "flexible and fact-specific, a court should use, adapt, or reject *Daubert*

factors" as needed based on the facts of a particular case.[15]

      The most recent amendments to Rule 702 added three general standards for courts to use

in determining the reliability and relevance of proffered expert testimony.  First, the proffered

testimony must be based on sufficient facts or data.[16]   Second, it must be the product of reliable

---

[10]*Id.*

[11]*Id.* at 799-800 (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993)).

[12]*Id.* at 799.

[13]*Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278-78 (5th Cir. 1998).

[14]*Benham*, 423 F.3d at 861 (citing *Daubert*, 509 U.S. at 593-94).

[15]*Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005).

[16]Fed. R. Evid. 702(1).

principles and methods.[17]  Third, the expert must have applied those principles and methods

reliably to the facts of the case.[18]

The focus is not on the expert's conclusion, but on the methodology.[19]  The proponent of

the testimony "need not prove . . . that the expert's testimony is correct, but . . . must prove by a

preponderance of the evidence that the testimony is reliable."[20]  Determining the validity of an

expert's conclusions is the duty of the finder of fact.

## II.    ANALYSIS

### A.    Defendants' Motion to Exclude Expert Testimony of Dr. Robert Fincher (Doc. No. 105)

Dr. Fincher is Plaintiff's radiology/mammography expert.  Plaintiff asked Dr. Fincher to

review mammograms and determine whether "to a reasonable degree of medical probability, E+P

had an effect on the density of Plaintiffs' breasts as measured by mammogram."[21]  He also was

asked to determine whether "based on the mammographic findings, E+P contributed to the

development" of Plaintiff's breast cancer.[22]

Defendants contend that Dr. Fincher's opinions are not supported by reliable scientific

evidence, are speculative, and are incomplete.[23]

---

[17]Fed. R. Evid. 702(2).

[18]Fed. R. Evid. 702(3).

[19]*Moore*, 151 F.3d at 275-76.

[20]*Id* at 276.

[21]Doc. No. 177.

[22]*Id.*

[23]Doc. No. 106.

The motion is GRANTED in PART and DENIED in PART.

Dr. Fincher can testify generally about changes in breast density and the relationship, if any, between breast density and breast cancer risk.  However, Dr. Fincher has not established, on this record, that changes in this Plaintiff's breast density, as related to HRT use, caused her cancer.  Dr. Fincher's conclusions regarding any increase in Plaintiff's breast density after taking HRT lack reliability, because Dr. Fincher did not observe Plaintiff's pre-HRT mammograms. Even he concedes this point: "What I don't know is did it actually increase the degree of her breast density when she started taking the hormones, because there are no pre-hormone replacement therapy  mammograms to compare."[24]

### B.	Defendants' Motion to Exclude Expert Testimony of Dr. Elizabeth Naftalis (Doc. No. 113)

Dr. Elizabeth Naftalis is Plaintiff's specific causation expert, who will testify that Plaintiff's ingestion of HRT was a substantial contributing factor in Plaintiff's development of hormone dependant breast cancer.[25]

Defendants assert that Dr. Naftalis's testimony should be excluded, because differential diagnosis is not a reliable method to determine the cause of Plaintiff's breast cancer, and Dr. Naftalis does not reliably apply her methodology to the facts of this case.[26]

I believe that Judge Wilson's rulings in the previous bellwether trials are on point, and I adopt them here.  To paraphrase: while the report is somewhat conclusive, rather than

---

[24]Fincher Dep., July 20, 2007 Tr. at 41, lines 9-13.

[25]Doc. No. 183, Ex. 1.

[26]Doc. No. 114.

explanatory, I cannot say that Dr. Naftalis used improper methodology.  She is qualified to testify that HRT more likely than not promoted Plaintiff's breast cancer.  Her conclusions can be tested during cross-examination.[27]

Accordingly, Defendants' Motion to Exclude Expert Testimony of Dr. Elizabeth Naftalis (Doc. No. 113) is DENIED.

### C. Defendants' Motion to Exclude Expert Testimony of Dr. Matthew Hollon (Doc. No. 109)

Dr. Hollon is Plaintiff's marketing expert.  Plaintiff asserts that Dr. Hollon will testify regarding "pharmaceutical marketing and its impact on the medical community . . . ."[28]  Plaintiff contends that Dr. Hollon will "educate the jury on marketing strategies, effectiveness and how Wyeth used the loopholes in the FDA regulations . . . to influence and persuade physicians about the safety and effectiveness of E+P drugs."[29]

#### 1. Liability Stage

As mentioned in Section I of this Order, the testimony must be relevant, in that it must help the trier of fact either understand the evidence or determine a fact in issue.[30]  The burden of establishing relevancy, reliability, and necessity of Dr. Hollon's testimony rests on Plaintiff.[31]

---

[27]See *In re Prempro, Reeves v. Wyeth*, No. 4:05-CV-00163, 2006 WL 2314062, at *3 (E.D. Ark. August 21, 2006) (citations omitted).

[28]Doc. No. 174.

[29]*Id.*

[30]*U.S. v. Cawthorn*, 429 F.3d at 799.

[31]*Moore v. Ashland Chem., Inc.*, 151 F.3d at 278-78.

Here, Plaintiff asserts that if, during trial, Judge Wilson admits evidence that shows reliance on certain marketing materials, Dr. Hollon's testimony *may* become relevant. At this point, Plaintiff is unable to show whether Dr. Hollon's testimony is relevant or aids the trier of fact in understanding the evidence. Dr. Hollon appears to be qualified as an expert in pharmaceutical marketing, in general, but whether he can render an opinion on specific marketing is tied to what evidence is introduced at trial.

At this stage, Dr. Hollon must have examined the evidence necessary to form his expert opinion. Also, Plaintiff should be able to identify the marketing or promotional materials they believe would be admissible under Judge Wilson's previous rulings regarding reliance and marketing evidence. Instead, Plaintiff attempts to condition Dr. Hollon's opinions on evidence that *may* become available at trial.

Plaintiff concedes Dr. Hollon's opinions are based on what may become available during trial. Without the specific fact, data, or other evidence necessary for Dr. Hollon's opinion, I must GRANT Defendants' Motion to Exclude Expert Testimony of Dr. Matthew Hollon (Doc. No. 109), at this time.

## 2.    Punitive Damages Stage

Judge Wilson previously addressed the issue of the admissibility of Dr. Hollon's testimony at the punitive damages stage, if there is one:

> It seems to me that any evidence of Defendant's "badness" during the punitive damage portion of the trial (if there is one) must be connected to Ms. Reeves's injury. However, the nexus between Plaintiff and the advertisements need not be as strong as the causation requirements during the liability stage of the trial. Dr. Hollon can testify regarding advertisements -- however, those advertisements must pertain to issues that are directly linked to Plaintiff, e.g., cardiac benefit, breast cancer, etc.

Dr. Hollon will not be permitted to testify regarding general badness or badness in the specific areas which are not connected to Ms. Reeves's injury.[32]

The Supreme Court held that:

Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible-although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.

*Philip Morris U.S.A. v. Williams*, 127 S. Ct. 1057, 1064 (2007).

Judge Wilson's ruling is still appropriate.


**D.     Dr. Austin Cellular Testimony**

The November 9, 2007 Order noted that I could find nothing in the record regarding

Dr. Austin's testimony on the development of breast cancer at the cellular level.  Plaintiff

supplemented the record on November 13, 2007.  Based on this supplement, I am convinced that

Dr. Austin can testify on this issue.  The November 9, 2007 Order is VACATED to the extent

that it granted Defendants' motion to exclude Dr. Austin's testimony regarding development of

breast cancer at the cellular level.  Accordingly, the motion is DENIED on this point.

IT IS SO ORDERED this 15th day of November, 2007.

_____
*Henry L. Jones, Jr.*
UNITED STATES MAGISTRATE JUDGE

---

[32]*In re Prempro, Reeves v. Wyeth*, No. 4:05-CV-00163, 2006 WL 2314062, at *5 (E.D. Ark. August 21, 2006) (citations omitted).

8