# CLOSING INSTRUCTION NO. 1

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because all are important. This is true even though several of those I gave you during the trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room. Each of you has a copy to follow if you want to, but please do not read ahead of me. You may make notes on your copy of the instructions during closing arguments, but please do not mark on my copy on the front page of which I have written, "Court's Copy." Again, all instructions, whenever given and whether in writing or not, must be followed.

## CLOSING INSTRUCTION NO. 2

Nothing I have said – neither in these instructions nor in any ruling, action, or remark that I have made during the course of this trial – was intended to give any opinion or suggestion as to what your verdicts should be.

## CLOSING INSTRUCTION NO. 3

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider a witness's intelligence, the opportunity a witness had to see or hear the things testified about, a witness's memory, any motives a witness may have for testifying a certain way, the manner of a witness while testifying, whether a witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.

## CLOSING INSTRUCTION NO. 4

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field may be called as an expert witness and is permitted to state his opinion on those technical matters. Such witnesses have testified in this case. You are not required to accept the opinion of an expert. As with any other witness, it is up to you decide whether to rely upon it in whole, or in part, or not at all.

If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinions are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has economic, philosophical, or any other interest in the outcome of the case.

## CLOSING INSTRUCTION NO. 5

The fact that a party is a corporation should not affect your decision. Corporations are considered persons by the law, and all persons are equal before the law. Corporations, whether large or small, are entitled to the same fair and conscientious consideration by you as any other person.

## CLOSING INSTRUCTION NO. 6

Certain testimony has been presented to you through a deposition or parts of a deposition. A deposition is the sworn, recorded questions and answers by a witness before trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony can be presented, under oath, in a deposition. At some time before this trial, lawyers representing the parties in this case questioned the witness under oath. A court reporter was present and recorded the testimony. The questions and answers were read or presented by videotape to you. This deposition testimony is entitled to the same consideration, and is to be judged by you as to credibility, and weighed and otherwise considered by you, as far as possible, in the same way as if the witness had testified here in court.

## CLOSING INSTRUCTION NO. 7

Ms. Scroggin and Wyeth have stipulated – that is, they have agreed – that certain facts are as counsel stated. You should, therefore, treat those facts as having been proved.

## CLOSING INSTRUCTION NO. 8

During the course of the trial, when some exhibits were offered and admitted into evidence, I gave you instructions limiting the use you may make of those exhibits. You are reminded that you are to consider these exhibits only insofar as they concern the limited issues that I have identified. To assist you during your deliberations, any exhibit that has been admitted for a limited purpose will have attached a copy of the relevant instruction for your review.

## CLOSING INSTRUCTION NO. 9

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claim or defense depends upon that fact. The party who has the burden of proving a fact must prove it by the greater weight of the evidence. To prove something by the greater weight of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved.

The greater weight of the evidence is not necessarily determined by the greater number of witnesses or exhibits a party has presented.

Undoubtedly, you have heard of the term "proof beyond a reasonable doubt." As I told you earlier, that is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put that term out of your minds for this case.

## CLOSING INSTRUCTION NO. 10

The law frequently uses the expression "proximate cause," with which you may not be familiar. When I use the expression "proximate cause," I mean a cause which, in a natural and continuous sequence, produces or promotes damage and without which the damage would not have occurred.

This does not mean that the law recognizes only one proximate cause of damage. To the contrary, if two or more causes work together to produce or promote damage, then you may find that each of them was a proximate cause.

A "producing" cause is one that in natural and continuous sequence causes or initiates injury and without which the injury would not have occurred.

A "promoting" cause is one that in a natural and continuous sequence aggravates a pre-existing condition or disease and without which the full extent of the injury would not have occurred.

In this regard, you should consider the full extent of any injury sustained, even though the degree of injury is found by you to have been proximately caused by the aggravation of a condition or disease that already existed. However, you may not award Ms. Scroggin damages for any injury which she would have suffered had she not taken Premarin (with Provera) or Prempro.

The witnesses may have used the terms "produce," "promote," "cause," and "proximate cause" in different ways. You are to consider the evidence in light of the definitions of "produce," "promote," "cause," and "proximate cause" that I have given you.

## CLOSING INSTRUCTION NO. 11

I will now discuss with you Ms. Scroggin's claim for failure to warn. In order to decide this claim, you must determine whether the Ms. Scroggin has proven by the greater weight of the evidence that the warnings for Premarin, Provera, or Prempro were inadequate and, if so, whether the lack of an adequate warning was a proximate cause of Ms. Scroggin's injury.

A product warning is inadequate if the manufacturer fails to give a reasonably prudent physician adequate warning of a particular risk that was known or knowable to the manufacturer at the time of manufacture and distribution. A drug manufacturer is held to the skill of an expert in its business and must keep reasonably abreast of scientific knowledge and discoveries touching its products. The duty to warn may include a duty to test or otherwise discover risks about which a manufacturer should warn.

To provide an adequate warning, the manufacturer must disclose the known or knowable risks of the product so that the physician can exercise his reasonable medical judgment in deciding whether to prescribe the drug for a particular patient. There is no duty, however, to warn physicians of obvious dangers or those known to physicians or those which physicians should reasonably discover for themselves.

The law requires prescription drug manufacturers to warn physicians who prescribe a drug about its risks and to instruct physicians about its safe use. The law does not require prescription drug manufacturers to warn patients directly about a drug's risks or to instruct patients directly about a drug's safe use. However, if you find from the greater weight of the evidence that Ms. Scroggin before her diagnosis of breast cancer, was reasonably aware of the dangers from using Premarin (with progestin), Provera (with estrogen), or Prempro then you must find for defendants Wyeth and Upjohn.

11

A manufacturer has the duty to warn about the risks of any intended or foreseeable risks of the use of its product including risks created by the product being used with another product.

In order to prove her failure to warn claim against Wyeth, Ms. Scroggin must prove: (1) that Wyeth's warnings for Premarin (with progestin) or Prempro were inadequate; (2) that any inadequacy affected Dr. Kuperman's decision to prescribe the drugs for her; and (3) that had Dr. Kuperman prescribed the drugs in a different manner, or not at all, she would not have suffered injury.

In order to prove her failure to warn claim against Upjohn, Ms. Scroggin must prove: (1) that Upjohn's warnings for Provera (with estrogen) were inadequate; (2) that any inadequacy affected Dr. Kuperman's decision to prescribe the drug for her; and (3) that had Dr. Kuperman prescribed the drug in a different manner, or not at all, she would not have suffered injury.

## CLOSING INSTRUCTION NO. 12

Every person using ordinary care has a right to assume, until the contrary is or reasonably should be apparent, that every other person will use ordinary care. To act on that assumption is not negligence.

## CLOSING INSTRUCTION NO. 13

Premarin, Prempro, and Provera are prescription drugs regulated by the Food and Drug Administration – the "FDA." Evidence that Wyeth or Upjohn complied with FDA regulations – including standards for testing, labeling, warning, or instructions for use of (i) Premarin and Prempro and (ii) Provera, respectively – shall be considered by you as evidence that Defendants' drugs were adequately labeled.

But compliance with FDA regulations does not necessarily absolve the manufacturer of liability. Even if you find that Wyeth and Upjohn met all FDA regulations and requirements, which are minimum standards, such compliance is not a defense if a reasonable and prudent manufacturer would have taken added precautions.

You may give evidence regarding compliance with FDA regulations whatever weight you deem appropriate.

**CLOSING INSTRUCTION NO. 14**

The fact that an injury occurred is not, itself, evidence of fault on the part of anyone.

## CLOSING INSTRUCTION NO. 15

I will now discuss with you Wyeth's and Upjohn's defense that Ms. Scroggin did not file her lawsuit in time. Wyeth and Upjohn have the burden of proving that more than three years passed between the time that Ms. Scroggin's claims accrued and the date that she filed the lawsuit. Her claims accrued when she knew, or by the exercise of reasonable diligence, should have discovered a causal connection between hormone therapy and her breast cancer.

Ms. Scroggin filed her lawsuit on April 7, 2004. If you find that Wyeth and/or Upjohn have proven that Ms. Scroggin knew, or by the exercise of reasonable diligence, should have discovered a causal connection between hormone therapy and her breast cancer before April 7, 2001, you should find that the lawsuit was not filed in time.

I am not instructing you that there is any causal connection between hormone therapy and Ms. Scroggin's breast cancer – that is for you to determine.

## CLOSING INSTRUCTION NO. 16

If you decide for Ms. Scroggin on the question of liability, you must then fix the amount of money, if any, which will reasonably and fairly compensate her for the nature, extent, duration and permanency of any injury. In this regard, you may consider:

The nature, extent, duration, and permanency of any injury.

In this regard you should consider the full extent of any injury sustained, even though the degree of injury is found by you to have proximately resulted from the aggravation of a condition or disease that already existed. However, you may not award her damages for any pain, suffering, mental anguish, medical expenses, scars or disfigurement which she would have suffered even though she had not taken Premarin (with Provera) or Prempro.

The reasonable expense of any necessary medical care, treatment and services received and the present value of such expense reasonably certain to be required in the future.

Any pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future.

Any scars and disfigurement and visible results of Ms. Scroggin's injury.

Whether any of these elements of damage has been proven by the evidence is for you to determine.

In fixing the amount of money, if any, which will reasonably and fairly compensate Ms. Scroggin for any damages, you may not consider whether any additional money award to Ms. Scroggin would be appropriate either to punish Wyeth and Upjohn for their past conduct or to deter similar conduct in the future.

## CLOSING INSTRUCTION NO. 17

In conducting your deliberations and returning your verdict, there are certain rules you must follow. I will discuss those rules now.

First, when you go to the jury room, you must select one of your members as your presiding juror. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, please remember, no cellular telephones are permitted in the jury room during deliberations – even one that is turned off.

Fourth, if you need to communicate with me during your deliberations, you may send a note to me through the bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone – including me – how your votes stand numerically.

Fifth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.

Sixth, the verdict forms are simply the written notice of the decision that you reach in this case. Please take a moment now to read the attached verdict forms. You will take these forms to the jury room, and when each of you has agreed on the verdict(s) as to each cause of action, your presiding juror will fill in the form, sign, and date it. Upon completing all the questions on the form, your foreperson should advise the bailiff that you are ready to return to the courtroom.